**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **RASHAD SANFORD** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.  08-CV-6325** |
| **v.** | ) | |
| **WALGREEN COMPANY** | ) | **JUDGE DAVID H. COAR** |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Rashad Sanford ("Plaintiff" or "Sanford") brings an action against

Defendant Walgreen Company ("Defendant" or "Walgreens") alleging that Defendant

discriminated against him on the basis of his race, in violation of Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.* (Count I), the Illinois Human

Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq.* (Count II), and 42 U.S.C. § 1981 (Count

III).  Plaintiff also alleges that Defendant committed wage and hours violations in

contravention of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* (Count

IV) and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.* (Count V).

Defendant moves to dismiss all time-barred claims— all Title VII claims that arose prior

to May 3, 2007 (Count I), all IHRA and § 1981 claims that arose prior to November 4,

2004 (Counts II & III), and all FLSA and IMWL claims that arose prior to November 4,

2005 (Counts IV & V).  Plaintiff agrees with Defendant's application of the relevant

statutes of limitation to Counts III, IV, and V, and Plaintiff now requests that the Court

dismiss Count II in its entirety.  The only issue that remains is whether Plaintiff may

assert Title VII claims for incidents that occurred prior to May 3, 2007.  For the reasons

stated below, Defendant's motion to dismiss is **GRANTED.**

> I.    FACTUAL BACKGROUND

The following facts drawn from Sanford's complaint are accepted as true for the

purpose of resolving Defendant's motion to dismiss.  *See Tamayo v. Blagojevich*, 526

F.3d 1074, 1081 (7th Cir. 2008).  Sanford, an African-American male, has been

employed by Walgreens since March 13, 1999.  Compl. ¶¶ 1, 3.  Sanford began his

employment as an Assistant Manager and Management Trainee and was promised that if

he performed well, Walgreens would promote him to Store Manager.  *Id.* at ¶ 4.  Despite

Sanford's aspiration to become Store Manager, and ten years of almost entirely positive

performance reviews, Walgreens has never promoted Sanford; he remains an Executive

Assistant Manager at Defendant's Store 2036 in Chicago, Illinois.  *Id.* at ¶ 1.

Sanford claims that he has been systematically prevented from advancing because

of his race and that he has endured numerous other forms of racial discrimination

throughout his employment at Walgreens.  Walgreens has denied Sanford promotions

five times, while instead promoting less experienced, less qualified Caucasian employees.

*Id.* at ¶¶ 6, 10, 12, 20, 30.  In addition, during the course of his employment at

Walgreens, spanning multiple stores over ten years, Sanford has experienced

discriminatory treatment including denial of opportunities afforded white employees,

assignment to perform responsibilities for which he was over-qualified, and subjection to

vacation and sick day policies applied unevenly between black and white employees.

### a.   The Waterloo Store (August 2000 – May 2005)

From August of 2000 until May of 2005, Sanford worked at Walgreens'

Waterloo, Iowa store.  After completing the company's Applied Drug Store Management

training program in August of 2001, Sanford was promoted from Assistant Manager to

Executive Assistant Manager, the position he still holds today.  *Id.* at ¶¶ 4-5.  In July of

2002, Defendant denied Sanford a promotion to Store Manager, and instead, Defendant

hired Jill Janni, a Caucasian, who relocated from another store and therefore had less

experience with the Waterloo demographic than Sanford.  *Id.* at ¶ 6.  While at the

Waterloo Store, from July of 2002 through September of 2004, Sanford was scheduled to

work six days per week, including nights and weekends, was improperly suspended, and

was subjected to a sick day policy that was not also applied to white employees.  *Id.* at ¶¶

7-12.

### b.   Store 5124 (May 2005 – July 2005)

In May of 2005, Sanford was transferred to Store 5124, where he served as an

Executive Assistant Manager until July of 2005.  Sanford's transfer to Store 5124

constituted a promotion; the store attracted a higher volume of customers and offered

managers larger bonuses and more face time with district and regional management.  *Id.*

at ¶ 13.  At Store 5124, Sanford assumed many of the responsibilities normally afforded

to store managers.  *Id.* at ¶ 14.

### c.   Store 9141 (July 2005 – February 26, 2006)

As a result of his performance and accomplishments at Store 5124, Sanford was

transferred to Store 9141 in July of 2005, where he remained employed until February 26,

2006.  *Id.* at ¶¶ 15, 21.  While at Store 9141, Sanford was managed by Erica Bates, a

Caucasian, who he claims discriminated against him because of his race.  Bates

scheduled him to work all nights and weekends, assigned him back-to-back shifts,

assigned him duties for which he was over-qualified, improperly refused to allow Sanford

to use his accumulated sick days, and denied him compensation for sick days in violation

of company policy.  *Id.* at ¶ 18.  In addition, Sanford observed several instances in which

Bates treated employees and customers adversely because of their race.  *Id.* at ¶ 19.

When Sanford complained to district manager, Colleen Hayes, who is Caucasian, she was

unresponsive.  *Id.* at ¶¶ 18, 20.

### d.  Store 2036 (February 26, 2006 – Present)

On February 26, 2006, Sanford was demoted to Executive Assistant Manager of

Store 2036, despite his strong performance at Store 9141; both Bates and Hayes had led

Sanford to believe he performed his duties to their satisfaction, and Store 9141 fared well

throughout Sanford's tenure there.  *Id.* at ¶ 20.  Nonetheless, Sanford was transferred to a

smaller store with smaller bonuses, low morale, and less opportunity for advancement.

*Id.* at ¶ 23.  Until May of 2008, Store 2036 was managed by Brian Rost, a Caucasian with

neither the education nor experience level attained by Sanford.  *Id.* at ¶ 22.

Sanford claims that, during the two years he was managed by Rost, Rost

repeatedly discriminated against him because of his race.  Shortly after Plaintiff arrived at

Store 2036, four African-American assistant managers took leaves of absence "because

they believed the racially discriminatory treatment by Rost was intolerable."  *Id.* at ¶ 24.

In addition to observing Rost's discriminatory treatment of employees and customers, *id.*

at ¶ 27, Sanford experienced several instances of discrimination himself.  On May 11,

2006, when Sanford stopped by work on his day off wearing sweats, Rost laughed at him

and said, "You look like you're from the hood." *Id.* at ¶ 26.  In September of 2006, Rost twice assigned Sanford to unload a 350-piece delivery truck alone, despite Sanford's requests for help, and then frequently mocked Sanford for the injuries that he experienced as a result of this assignment. *Id.*  In July of 2007, for the first time during his career at Walgreens, Sanford received a negative performance review, which he believed was "unfair and inconsistent with his actual performance." *Id.*

Throughout his tenure, Rost favored Jacqueline Durnin, a white employee, over African-American employees by permitting her to assume management responsibilities even though she was not a manager, allowing her to create her own schedule, and allowing her to use sick days freely. *Id.* at ¶¶ 26-27.  During both the 2006 and 2007 holiday seasons, all African-American employees were required to work either Thanksgiving, Christmas, or New Years Day, while neither Rost nor Durnin was required to work on those holidays. *Id.* at ¶ 27.  Rost also permitted Durnin to use vacation time when African-American employees could not and took several white employees to lunch while preventing African-American employees from eating lunch together. *Id.*

When Rost resigned in May of 2008, Sanford was passed over for a promotion again. *Id.* at ¶¶ 29-30.  Instead, Defendant selected a Caucasian male with less experience than Sanford. *Id.* at ¶ 30.  Sanford claims that the same racial discrimination he has endured throughout his career at Walgreens prevails today.  He cites, as an example, the fact that in a district staffed heavily by African-Americans, only two out of twenty-five store managers are African-American. *Id.* at ¶ 28.

Sanford contacted the Equal Employment Opportunity Commission ("EEOC") alleging discriminatory treatment on February 27, 2008.  On November 4, 2008, Sanford

filed this lawsuit, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.* (Count I), the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.* (Count II), 42 U.S.C. § 1981 (Count III), the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (Count IV) and the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* (Count V).  Plaintiff requests that this Court dismiss Count II in its entirety,[1] and Plaintiff agrees with Defendant that the Court should dismiss, as time-barred, all claims underlying Count III that occurred prior to November 4, 2004 and all claims underlying Counts IV and V that occurred prior to November 4, 2005.  The parties dispute whether, under Count I, Plaintiff may assert Title VII claims stemming from events that occurred before May 3, 2007.

## II.    LEGAL STANDARD

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts all well-pleaded allegations in the plaintiff's complaint as true and draws all possible inferences in favor of the plaintiff.  Fed. R. Civ. P. 12(b)(6); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).  Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted).  Accordingly, to survive a motion to dismiss, a complaint must simply "state a claim that is plausible on its face."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face if it demonstrates "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 129 S.Ct. at 1949.  The plaintiff's factual allegations need not be "detailed," but they must include

---

[1] In his Reply brief, Plaintiff claims that he has dropped the Illinois Human Rights Act claim in his First Amended Complaint.  However, he has not yet filed this complaint with the Court.

more than "labels and conclusions" in order to "give the defendant fair notice of what . . .
the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting
*Conley v. Gibson*, 355 U.S. 41, 47(1957) (internal quotation marks omitted).

### III.    ANALYSIS

The parties have agreed that the applicable statutes of limitation bar some of
Plaintiff's initial § 1981, Fair Labor Standards Act, and Illinois Minimum Wage Law
claims, and Plaintiff asserts that his Illinois Human Rights Act claim should be dismissed
in its entirety.  At issue, then, is the timeliness of Plaintiff's Title VII claims.  Defendant
contends that Plaintiff's Title VII claims dating prior to May 3, 2007 are time-barred.
Title VII requires a complainant to file a charge of discrimination with the EEOC within
300 days "after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-
5(e); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).  Whether an
individual may recover for discriminatory acts that fall outside this 300-day limitations
period depends on the type of discriminatory act at issue.  *See Morgan*, 536 U.S. at 110-
18; *Lucas v. Chi. Transit Authority*, 367 F.3d 714, 723 (7th Cir. 2004).  In *Morgan*, the
Supreme Court differentiated between two types of discriminatory acts—"discrete" acts
and acts that contribute to a "hostile work environment."  *Morgan*, 536 U.S. at 110-18.

With respect to "discrete" acts, each act is a "separate actionable 'unlawful
employment practice'" that "starts a new clock for filing charges." *Lucas*, 367 F.3d at
723; *Morgan*, 536 U.S. at 114.  Accordingly, "discrete discriminatory acts that fall
outside the statute of limitations are time-barred even though they may relate to other
discrete acts that fall within the statute of limitations."  *Lucas*, 367 F.3d at 723.

Examples of "discrete" acts include "termination, failure to promote, denial of transfer, or refusal to hire." *Morgan*, 536 U.S. at 114.

In *Morgan*, the Court characterized acts contributing to a hostile work environment as "different in kind from discrete acts." *Id.* at 115. Acts contributing to a hostile work environment involve "repeated conduct" that "occurs over a series of days or perhaps years." *Id.*; *Lucas*, 367 F.3d at 724. Accordingly, an individual discriminatory act "may not be actionable on its own," but the combined effect of these acts may result in a "hostile work environment." *Morgan*, 536 F.3d at 115-16; *see also Lewis v. City of Chi.*, 528 F.3d 493 (7th Cir. 2008) ("The first instance of a coworker's offensive words or actions may be too trivial to amount to actionable harassment, but if they continue they may eventually amount to an actionable pattern of harassing behavior."). By nature, a hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Morgan*, 536 F.3d at 116 (internal quotation marks omitted). In such an environment, "racially-motivated conduct is so severe or pervasive that it is objectively hostile and the victim herself finds it abusive." *Hendricks v. Ill. Dept. of Human Servs.*, 80 Fed. Appx. 489, 491 (7th Cir. 2003).

Acts characterized as contributing to a hostile work environment are treated differently than "discrete" discriminatory acts for the purpose of the statute of limitations. Incidents that create a hostile work environment comprise "one unlawful employment practice," and an employer may be liable for all acts underlying a single hostile work environment claim. *Morgan*, 536 F.3d at 117. Accordingly, individual incidents may be

actionable even if they fall outside of the statutory period.  *Id.*  Specifically, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  *Id.*; *Lucas*, 367 F.3d at 724; *Hildenbrandt*, 347 F.3d 1014, 1033 (7th Cir. 2003).

Despite this general principle, an employer's liability for acts that occurred outside the statutory period is not unlimited; acts that pre-date the statutory period must relate sufficiently to timely acts.  *See Morgan*, 537 F.3d at 118.  For example,

> [I]f an act on day 401 had no relation to the acts between days 1-100, or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim, then the employee can not recover for the previous acts, at least not by reference to the day 401 act.

*Id.*  To determine whether acts that occurred before the statutory period contribute to the same "hostile work environment" as timely acts, courts must consider whether the acts "involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers."  *Id.* at 120 (internal quotation marks omitted).  Acts that are "so discrete in time or circumstances that they do not reinforce each other" do not constitute a single "hostile work environment" for the purpose of defeating the statute of limitations.  *Lucas*, 367 F.3d at 727 (internal quotation marks omitted).

In his complaint, documenting incidents that date back to the start of his career at Walgreens in 1999, Sanford alleges various acts of discrimination that fall outside of the statutory period.  The statutory period in this case extends to May 3, 2007—300 days before Sanford filed his claim with the EEOC.  *See* 42 U.S.C. § 2000e-5(e).  Walgreens moves to dismiss all of Sanford's Title VII claims dating earlier than May 3, 2007 as time-barred.  Specifically, Walgreens argues that all "discrete" acts that occurred before

May 3, 2007 are untimely, and these time-barred "discrete" acts cannot form the basis of Sanford's "hostile work environment" claim.

Because "discrete" acts that pre-date May 3, 2007 are not actionable, even if they relate to timely claims, Sanford's pre-May 3, 2007 claims can be saved only if they contribute to the same "hostile work environment" that he alleges he has endured since May 3, 2007.  *See Morgan*, 537 F.3d at 115-17.  Sanford's complaint alleges various "discrete" acts, such as the five times Walgreens denied him promotions, *see id.* at 114, and numerous other discriminatory acts that amount to three separate hostile work environment claims— at the Waterloo Store, Store 9141, and Store 2036.  The discrimination Sanford claims at each store was not "perpetrated by the same managers;" Sanford complains of discrimination at the hands of Janni at the Waterloo Store, Bates at Store 9141, and Rost at Store 2036.  *Id.* at 120.  Moreover, Sanford's transfers to different stores constitute "intervening action[s] by the employer" that divide his allegations by store into separate, unrelated hostile work environment claims.  *See id.* at 118; *see also Isaacs c. Hill's Pet Nutrition, Inc.* 485 F.3d 383, 386 (7th Cir. 2007) ("An employee moved from one plant to another, where a different set of managers made decisions about working conditions, might well experience different hostile environments for the purpose of *Morgan*."); *Cox v. Am. Drug Stores*, No. 02 C 939, 2003 U.S. Dist. LEXIS 6536, at *9 (N.D. Ill. Apr. 17, 2003) (finding that incidents at separate stores did not constitute a single hostile work environment for the purpose of defeating the statute of limitations).  Accordingly, Sanford's claims concerning the Waterloo Store (August 2000 – May 2005) and Store 9141 (July 2005 – February 26, 2006) did not contribute to the same hostile work environment as the claims concerning Store 2036 (February 26,

2006 – Present).  Therefore, the claims regarding the Waterloo Store and Store 9141 are time-barred.

The issue that remains, then, is whether the Court may consider alleged acts of discrimination in Sanford's current workplace, Store 2036, even though some of these acts occurred prior to May 3, 2007.  Sanford concedes that the "discrete" acts before the statutory period are "not actionable" but suggests that they "can be used as evidence to demonstrate a hostile work environment."  Pl. Br. 2.  In fact, under *Morgan*, Sanford's claims that begin when he was transferred to Store 2036 on February 26, 2006, *could be* actionable if they comprise part of the same "hostile work environment" as his timely claims, but not if they truly constitute "discrete" acts.   The claims specifically at issue include: (1) Rost's discriminatory comment to Sanford on May 11, 2006, (2) Sanford's two assignments to unload delivery trucks by himself in September of 2006, (3) Rost's mocking Sanford for the injuries he then suffered, and (4) Rost's allegedly discriminatory policies with respect to vacation days and holidays during 2006 and 2007.  Sanford correctly characterizes these as "discrete" acts.  As such, they are independently actionable and could be considered by this Court only if Sanford had filed a charge with the EEOC within 300 days of their occurrence.  *See* 42 U.S.C. § 2000e-5(e).  Because he failed to do so, all Title VII claims based on incidents that occurred prior to May 3, 2007 are time-barred and are therefore DISMISSED.  The Court renders no opinion at this time on whether evidence of these incidents may be used to support Sanford's timely claims.

### IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED**. Specifically, Count II is DISMISSED with prejudice, as are all Count I claims that arose

before May 3, 2007, all Count III claims that arose before November 4, 2005, and all

Count IV and V claims that arose before November 5, 2005.


Enter:

/s/ David H. Coar

David H. Coar

United States District Judge

**Dated:** September 23, 2009