**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RASHAD SANFORD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08 C 6325 |
| v. | ) | |
| | ) | |
| WALGREEN COMPANY | ) | JUDGE DAVID H. COAR |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Rashad Sanford ("Plaintiff" or "Sanford") brings this action against Defendant Walgreen Company ("Defendant" or "Walgreens"), alleging that Defendant discriminated and retaliated against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.* and 42 U.S.C. § 1981 (Count I) and that Defendant improperly classified him as an exempt employee and failed to pay him for overtime work in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* (Count IV) and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.* (Count V). Defendant moves for summary judgment on all of these claims. In response to Defendant's motion, Plaintiff withdraws his FLSA and IMWL claims. Accordingly, the only issue before the Court is whether Defendant is entitled to summary judgment on Plaintiff's claims for violations of Title VII and § 1981 (Count I). For the reasons stated below, Defendant's motion for summary judgment is granted.

**BACKGROUND**

Plaintiff Rashad Sanford is currently an Executive Assistant Store Manager ("EXA") in Walgreens Store 2036. (Defendant's Rule 56.1 Statement of Material Facts ("DSOF") ¶¶ 1, 16.) He has been employed by Walgreens since March 1999 (*id.* ¶ 5), and he began working at Store

2036 in February 2006 (*id.* ¶ 16). Store 2036 falls within District 203, which is managed by district manager, Colleen Hayes ("Hayes"). (*Id.* ¶ 6.) Sanford has reported to three different store managers while employed at Store 2036, including Brian Rost ("Rost") who he claims discriminated against him on account of his race. (*Id.* ¶ 23.)

To support his allegation that Rost discriminated against him, Sanford identifies two comments he claims reflect Rost's racial animus. Sanford alleges that, on one occasion, when he came into work on his day off wearing a "jogging suit," Rost told him, "you look like you're from the hood," and, on another occasion, he overheard Rost state that the store was in the "ghetto." (DSOF ¶¶ 25-26.) Sanford also claims that Rost surrounded himself with white employees and generally treated them more favorably than black employees. According to Sanford, Rost's discriminatory animus influenced his review of Sanford's performance. In Sanford's 2007 performance review, Rost gave him an overall rating of "meets expectations." (*Id.* ¶ 30.) Sanford received the same overall rating in his 2006 performance review, which was also completed by Rost, and in 2008 and 2009 performance reviews issued by other managers. (*Id.* ¶ 29.) Sanford does not believe that those reviews were discriminatory or retaliatory. (*Id.*) In addition to contesting the overall rating Rost gave him in 2007, Sanford believes Rost assessed his performance unfairly in six categories: Inventory Management, Shrink Control, Pharmacy Operations, Follow-Through, Time Management, and Leadership. (*Id.* ¶ 31.) However, Sanford admits to shortcomings in several of these areas. In the category of Shrink Control, in which Rost rated Sanford "needs improvement," Sanford admits that he "missed a couple of cash counts." (*Id.*) In Pharmacy Operations, in which Rost gave Sanford an "unacceptable rating," Sanford testified that he did not meet the goal that was set for him in that area. (*Id.*) With respect to Follow-Through and Time Management, in which Rost rated Sanford

"needs improvement," Sanford admits that there was a project that he did not complete. Additionally, Sanford claims that he deserved higher ratings than "meets expectations" in Leadership and "needs improvement" in Inventory Management. Rost's 2007 review of Sanford's performance also included ratings of "above average" in four categories and praised Sanford for serving as a "team player [who] will help out where required," being "very good with customers and employees" and "communicat[ing] with people very well." (Pl. Ex. 9.)

Sanford blames his 2007 performance review, in part, for Walgreens's failure to promote him from EXA to store manager. In Sanford's district, district manager Colleen Hayes decides which employees to promote. (DSOF ¶ 55.) Sanford believes that he should have been promoted to any open store manager position since he began working in July 2005. When deciding whom to promote, Hayes considers "each individual's combination of attributes." (*Id.* ¶ 56.) Although she considers many factors in this analysis, Hayes typically promotes only those EXAs who have received at least "above average" performance review ratings. (*Id.*) Since July 2005, Hayes has promoted 12 individuals. (*See id.* ¶¶ 59-70.) Of these 12, three were black, and ten had performance ratings higher than Sanford's (e.g., "above average" or "outstanding") in the year leading up to their promotions. (*See id.*) Hayes explained why she believed that each EXA she promoted was more qualified than Sanford. (*Id.*) For example, she testified that Mirdad Sweis, who did not receive a higher performance review than Sanford, was more qualified than Sanford because he "had stronger merchandising, leadership, and stockroom organization skills." (*Id.* ¶ 65.) The other EXA promoted without a higher performance review than Sanford was Latoya Elston, a black woman. (*Id.* ¶ 63.) Hayes explained that she promoted Elston over Sanford because Elston had previous experience as a store manager in a different Walgreens district, and she "had stronger management and merchandising skills . . . and demonstrated a

greater sense of urgency" than Sanford. (*Id.*) Sanford testified that he had no reason to believe that Hayes would lie about why she selected certain people for their positions. (*Id.* ¶ 58.)

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts (a "scintilla of evidence" is insufficient) demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 252.

When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). At summary judgment, the "court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

## ANALYSIS

When Sanford initiated this lawsuit, he alleged that he suffered various forms of race discrimination throughout his career at Walgreens. In response to Walgreens's motion for

summary judgment, Sanford withdraws his claim that he experienced a hostile work environment due to race discrimination. In addition, Sanford fails to respond to Walgreens's motion regarding his claim that he was demoted because of his race, and Walgreens is therefore entitled to summary judgment on that claim. Sanford's remaining claims revolve around Walgreens's failure to promote him from EXA to store manager. Specifically, Sanford claims that Walgreens repeatedly passed him over for promotions because of his race, that in 2007, Rost issued a discriminatory performance review that contributed to Walgreens's failure to promote him, and that Walgreens retaliated against Sanford by refusing to promote him after he filed a charge of discrimination with the EEOC.

**I.   Failure to Promote**

Walgreens moves for summary judgment on Sanford's claim that the company failed to promote him because of his race in violation of Title VII and 42 U.S.C. § 1981.[1] A plaintiff can support a claim for failure to promote by directly showing that an employer's decision was motivated by racial discrimination (the "direct method") or by employing the burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (the "indirect method"). *Brown v. Ill. Dept. of Natural Res.*, 499 F.3d 675, 681 (7th Cir. 2007); *see Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 630 (7th Cir. 2009). As Sanford argues that his claim survives summary judgment under either method, the Court considers each in turn, beginning with the direct method.

**a.  Direct Method**

Under the direct method, a plaintiff survives summary judgment by presenting evidence

---

[1] The Court analyzes Sanford's § 1981 and Title VII claims simultaneously because they both require proof of the same elements to establish a prima facie case. *Antonetti v. Abbott Labs.*, 563 F.3d 587, 591 n.4 (7th Cir. 2009).

from which a jury could find that discrimination motivated the adverse employment action at issue. *Jones v. City of Springfield, Ill.*, 554 F.3d 669, 671 (7th Cir. 2009). Despite the name, "direct method," a plaintiff proceeding under this method may present either direct proof, such as admissions or "near-admissions" that an employer acted based on discriminatory animus, or circumstantial evidence that the employer acted based on such animus. *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009); *Atanus v. Perry*, 550 F.3d 662, 671 (7th Cir. 2008). "The focus of the direct method of proof thus is not whether the evidence offered is 'direct' or 'circumstantial' but rather whether the evidence 'points directly' to a discriminatory reason for the employer's action." *Id.* (quoting *Sylvester v. SOS Children's Vills. Ill., Inc.*, 453 F.3d 900, 902-03 (7th Cir. 2006)). A plaintiff can prevail under the direct method "by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decision-maker.'" *Rhodes v. Ill. Dept. of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (quoting *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994)). Specifically, the types of circumstantial evidence courts consider under this analysis include:

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group;
>
> (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and
>
> (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.

*Atanus*, 520 F.3d at 672 (quoting *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007)). Sanford claims that he has presented circumstantial evidence sufficient to survive summary judgment under all three categories.

With respect to the first category, Sanford identifies as circumstantial evidence two comments allegedly made by Brian Rost, who served as his manager from February 2006 to April 2008. Sanford alleges that, on one occasion, when he came into work on his day off wearing a "jogging suit," Rost told him, "you look like you're from the hood," and, on another occasion, he overheard Rost state that the store was in the "ghetto." (DSOF ¶¶ 25-26.) These comments do not raise a triable inference that Walgreens failed to promote Sanford because of his race. A remark can raise such an inference if it was "(1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action." *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 721 (7th Cir. 2008) (quoting *Hemsworth*, 476 F.3d at 491 (7th Cir. 2007)) (internal quotation marks omitted). Sanford presents no evidence demonstrating that either of Rost's comments was made around the time that Walgreens failed to promote him or that these comments referenced Walgreens's failure to promote him.

Sanford also admits that Rost was not the "decision maker;" Colleen Hayes, the district manager, decided which employees to promote. (DSOF ¶ 55.) Sanford argues, however, that Hayes relied on Rost's performance reviews, which he claims were infected by racial animus.[2] The Seventh Circuit sometimes relaxes the requirement that a discriminatory remark come directly from a decision maker in order to raise an inference of discrimination; the court has held specifically that "the statements of a person who lack the final decision-making authority may be probative of intentional discrimination if that individual exercised a significant degree of influence over the contested decision." *Sun v. Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 813 (7th

---

[2] In addition to Rost's alleged comments, Sanford also presents other evidence of Rost's alleged discriminatory animus, much of which is unavailing. For example, Sanford claims generally that Rost surrounded himself with white employees and treated them more favorably than black employees, though he fails to provide admissible examples of the disparate treatment he alleges. (Plaintiff's Rule 56.1 Statement of Material Facts ("PSOF") ¶ 3.) Sanford also claims that two other employees complained that Rost discriminated against them because of their race, but these complaints constitute inadmissible hearsay. (*Id.* ¶5.) Even if Sanford offered admissible evidence demonstrating that Rost harbored racial animus toward him, Sanford cannot prove that Rost's animus affected Hayes's decision not to promote him, as discussed below.

Cir. 2007). However, in cases where such statements raise a triable inference of discrimination, the individuals who make them exercise much more control over the decision-making process than Rost. *See Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 528 (7th Cir. 2008); *Sun*, 473 F.3d at 813. Indeed, in both cases cited by Sanford, the individuals directly participated in the decision in question. *See Hasan*, 552 F.3d at 528 (partner who made discriminatory comment was present at meeting in which partners decided to fire plaintiff, and evidence allowed a "rational inference that [he] not only participated in the decision to fire [plaintiff] but also may have instigated it"); *Sun*, 473 F.3d at 813 (discriminatory comment made by member of Promotion and Tenure Committee raised an inference that plaintiff was not promoted or given tenure because of his race). Unlike the individuals in these cases, Rost did not participate at all in Hayes's promotion decisions, and his comments, even if discriminatory, do not raise an inference that Walgreens failed to promote Sanford because of his race. *See Petts*, 534 F.3d at 721.

Moreover, Hayes conducted her own evaluations of the candidates' individual attributes each time she selected an employee to promote to store manager, thus defeating any suggestion that Rost's alleged racism infected her decisions. (DSOF ¶¶ 55-56.) Where discriminatory animus originates with a non-decision-making employee, that employee must exert a particularly high degree of influence over the decision maker for the court to impute his animus to the decision maker. *See Martino v. MCI Commc'ns*, 574 F.3d 447, 452-53 (7th Cir. 2009); *Staub v. Proctor Hosp.*, 560 F.3d 647, 655-59 (7th Cir. 2009); *Brewer v. Bd. of Trs. of Univ. of Ill.*, 479 F.3d 908, 916-20 (7th Cir. 2007). The Seventh Circuit has deemed the theory governing such cases the "cat's paw" theory[3]—meaning that the decision maker simply "[took] the monkey's

---

[3] As this Court has previously noted, the description of this theory comes from the fable in which a monkey dupes a cat into scooping chestnuts from a fire, resulting in burned paws for the cat and free chestnuts for the monkey.

word for it," acting entirely based on his influence. *Staub*, 560 F.3d at 656. Under this theory, discriminatory animus is imputed to the decision maker if the non-decision-making employee exercises "singular influence" over the decision maker to the extent that he is "the true functional decision-maker." *Brewer*, 479 F.3d at 917. Such influence is not found, however, "where a decision maker is not wholly dependent on single source of information, but instead conducts its own investigation into facts relevant to the decision." *Id.* at 918; *see also Martino*, 574 F.3d at 452-53 ("The [employer] can defeat . . . the cat's paw theory . . . by showing that . . . the decisionmaker did an independent analysis and came to his own conclusion."). Because Sanford has not offered evidence indicating that Rost exercised such "singular influence" over Hayes that he was the "true functional decision-maker," Rost's alleged racial animus cannot be attributed to Hayes under the cat's paw theory. Rather, Rost's "isolated comments," even assuming they communicate racial animus, "are no more than 'stray remarks' in the workplace [and] are insufficient to establish that a particular decision was motivated by discriminatory animus." *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 694 (7th Cir. 2006) (quoting *Cullen v. Olin Corp.*, 195 F.3d 317, 323 (7th Cir. 1999)).

Sanford next attempts to prove disparate treatment under the direct method through statistical evidence. Based on a document listing all EXAs in Sanford's district between July 2005 and September 2009, Sanford calculates that, while 29% of the EXAs in the district were black (27 of 94 EXAs), only 14% were promoted to manager (2 of 14 EXAs). (PSOF ¶ 24.) As Walgreens correctly points out, Sanford's statistics are flawed in several respects and therefore do not support his position that he was passed over for promotion because of his race. As an initial matter, Sanford's statistics result from a misinterpretation of the EXA list provided by Walgreens. While Walgreens's document lists all EXAs in Hayes's district during the relevant

time period, Sanford incorrectly assumes that Hayes promoted every EXA listed as a manager in her district. In fact, Hayes identified three managers on the list whom she did not promote,[4] and Hayes noted that another individual whom she did promote was missing from the list. (Hayes Decl. ¶¶ 3-4.) Hayes therefore promoted 12 EXAs, not 14. This sample size is simply too small to allow a reasonable inference of discrimination, as "it lacks sufficient breadth to be trustworthy." *Parker v. Fed. Nat'l Mortgage Ass'n*, 741 F.2d 975, 980-81 (7th Cir. 1984) (holding that a sample size of 12 employees was insufficient because "[a] small change in the underlying raw data would result in dramatic statistical fluctuations"); *see also DeLaney v. Chertoff*, No. 07 C 5785, 2008 U.S. Dist. LEXIS 88192, at *3-*4 (N.D. Ill. Oct. 30, 2008) (statistical evidence involving 15 promotion decisions was inadmissible because it lacked sufficient foundation or reliability).

Sanford's statistics suffer several additional flaws. As Walgreens notes, these statistics are misleading because they do not capture the available applicant pool for each promotion decision. *See Baylie v. Fed. Res. Bank*, 476 F.3d 522, 525 (7th Cir. 2007) (explaining the limited usefulness of statistics in a single-plaintiff discrimination case). Sanford's statistics assume that every EXA was available for every promotion, which was not the case. For example, one black EXA stopped working for Walgreens on in November 2006 and was therefore ineligible for any promotions after that date, and another black employee became an EXA in April 2008 and was ineligible for promotions before that date. (Pl. Ex. 19.) Unlike Sanford's statistics, a proper analysis "proceed[s] vacancy-by-vacancy in an individual case, not career-by-career." *Id.* Finally, Sanford's statistics ignore the "relative qualifications" of the candidates for promotion, rendering these statistics "next to worthless." *Hague v. Thompson Distribution Co.*, 436 F.3d

---

[4] Although these managers are now part of Hayes's district, at the time they were promoted, they were part of other districts and were promoted by those districts' managers. (Hayes Decl. ¶ 3, Dec. 14, 2009.)

816, 829 (7th Cir. 2006); *DeLaney*, 2008 U.S. Dist. LEXIS 88192, at *3 ("Without applicant pool information, statistics are irrelevant to the issue of discrimination.").

Sanford next argues that he can establish discrimination under the direct method by offering evidence that he was qualified for the store manager position but was passed over in favor of EXAs outside of his protected class, and Walgreens's reason for this is a pretext for discrimination. Like Sanford's other efforts to offer circumstantial evidence of discrimination, this argument is unavailing. Inexplicably, Sanford first attempts to demonstrate pretext by arguing that he was more qualified than two EXAs promoted by Hayes—both of whom are also black. Nevertheless, Sanford's main qualms with their promotions are that they occurred after Sanford filed his charge of discrimination with the EEOC and that Sanford was more senior than both of them. Sanford next contends that pretext exists because Hayes's reasons for promoting each EXA over him are a "moving target." (Pl. Br. 8.)

None of Sanford's evidence raises an inference of pretext. Pretext is "more than just faulty reasoning or mistaken judgment on the part of the employer; it is lie, specifically a phony reason for some action." *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 838-39 (7th Cir. 2009) (internal quotation marks and citation omitted). Sanford admits that he has no reason to believe that Hayes would lie about her reasons for promoting individuals other than Sanford. (DSOF ¶ 58.) As long as Hayes's explanation for selecting these individuals over Sanford is not a lie obscuring discriminatory animus, it is not a pretext for discrimination. Whether Hayes's methodology for choosing EXAs to promote is "fair, prudent, or wise is beside the point. Employers, not employees or courts, are entitled to define the core qualifications for a position, so long as the criteria utilized by the company are of a nondiscriminatory nature." *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1064 (7th Cir. 2003). Hayes's reasons for promoting EXAs may

indeed be a "moving target," as Sanford claims; Hayes explained that she decides which EXAs to promote based on "each individual's combination of attributes." (DSOF ¶ 56.) She is perfectly entitled to do so, and in the process, she is also entitled to disregard an employee's seniority. "Absent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext under Title VII." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1176 (7th Cir. 2002) (quoting *Denney v. City of Albany*, 247 F.3d 1142, 1185 (11th Cir. 2001)) (internal quotation marks omitted). At bottom, Sanford is simply unable to cast doubt on the honesty of Hayes's explanation; therefore, he fails to raise an inference that this explanation is a pretext for discrimination.

Because none of the circumstantial evidence Sanford offers "points directly" to a discriminatory explanation for Walgreens's decision not to promote him, Sanford fails to establish a prima facie case of discrimination under the direct method. *See Atanus*, 550 F.3d at 671.

### b. Indirect Method

Sanford next proceeds under the indirect method. Under the indirect method, a plaintiff establishes a prima facie case of discrimination by showing that: (1) he is a member of a protected class; (2) he was qualified for the position he sought; (3) he was rejected for that position; and (4) the position was awarded to someone outside the protected class "who was similarly or less qualified" than he was. *Hobbs v. City of Chi.*, 573 F.3d 454, 461 (7th Cir. 2009). If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscrimatory reason for its action. *Id.* Once the

defendant has done so, the burden shifts back to the defendant to demonstrate that the defendant's proffered explanation is pretextual. *Id.*

While Walgreens concedes that Sanford meets the first three requirements for establishing a prima facie case, Walgreens argues that Sanford fails to demonstrate that the EXAs Hayes promoted were similarly or less qualified than he was. The Court agrees. Setting aside the three black EXAs whom Hayes promoted over Sanford, six of the remaining seven EXAs had higher performance reviews than Sanford in the year leading up to their promotions. (Their overall ratings ranged from "above average" to "outstanding," while Sanford consistently received ratings of "meets expectations." (DSOF ¶¶ 29-30, 59-70.)) Of course, Hayes considers not only performance reviews when deciding whom to promote; she broadly considers "each individual's combination of attributes." (DSOF ¶ 56.) In accordance with that methodology, Hayes has provided undisputed reasons to explain why each employee she promoted was more qualified than Sanford. (*Id.* ¶¶ 59-70.) In particular, with regard to the only non-black employee promoted despite performance reviews no higher than Sanford's, Hayes explained that this employee was more qualified than Sanford because he "had stronger merchandising, leadership, and stockroom organization skills." (*Id.* ¶ 65.) Sanford is unable to challenge Hayes's assessment.[5]

Sanford also argues that he was more qualified than the EXAs promoted because he had more experience than they had, and he also possessed an MBA, unlike the employees promoted. This argument fails as well. As discussed above, Walgreens may design its own criteria for promoting EXAs as long as these criteria are not discriminatory. *See Cerutti*, 349 at 1064.

---

[5] Sanford does, however, attempt to challenge Hayes's evaluation by offering comments from this employee's performance review in his Statement of Facts. (*See* PSOF ¶ 28.) Because this paragraph is not supported by any citation to the record, the Court is entitled to disregard it. *See Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1001 (7th Cir. 2004) (where party fails to cite the record, "we will not root through the hundreds of documents and thousands of pages that make up the record here to make his case for him").

Accordingly, Hayes is perfectly entitled to consider "each individual's combination of attributes" (DSOF ¶ 56) and to disregard seniority or advanced degrees in the process. Sanford's opinion that his MBA and length of employment make him more qualified than the promoted EXAs does not raise a genuine issue of material fact as to this prong of the prima face case. *See Brown*, 499 F.3d at 684 ("a plaintiff's own opinions about [his] work performance or qualifications do not sufficiently cast doubt on the legitimacy of [his] employer's proffered reasons for its employment actions") (quoting *Millbrook*, 280 F.3d at 1181) (internal quotation marks omitted).

Sanford's broader argument that Hayes's methods are impermissibly arbitrary and subjective fails for similar reasons. As discussed above, an employer is entitled to award promotions based on purely subjective criteria, and Sanford fails to offer any evidence that Hayes's individual consideration of candidates is merely a "mask for discrimination." *Millbrook*, 280 F.3d at 1176 (quoting *Denney v. City of Albany*, 247 F.3d 1142, 1185 (11th Cir. 2001)) (internal quotation marks omitted). Sanford cannot raise a triable inference that the individuals Hayes promoted were similarly or less qualified than he was, and he therefore fails to establish a prima facie case of discrimination. Even if Sanford could establish a prima facie case, for the reasons already discussed, he is unable to prove pretext by casting doubt on the sincerity of Hayes's nondiscriminatory explanations for promoting ESAs other than Sanford. *See Hobbs*, 573 F.3d at 461.[6]

---

[6] In addition to the arguments the Court has already rejected, Sanford contends that Walgreens's explanation for denying him promotions was pretextual because he was often assigned menial tasks, and he was not offered sufficient development or training opportunities. However, Sanford offers no evidence that the individuals promoted were offered the development opportunities which he alleges he was denied, or were shielded from the menial tasks which he was assigned. Even if true, Sanford's allegations fail to establish that Hayes was lying about the reasons for her promotion decisions.

Because Sanford fails to present a prima facie case of discrimination under either the direct or indirect method, the Court must grant summary judgment on Sanford's claim that Walgreens failed to promote him because of his race.[7]

## II. Discriminatory Performance Review

Sanford next claims that his 2007 performance review was infected by discrimination in violation of Title VII. In this performance review, prepared by Rost, Sanford received an overall rating of "meets expectations." Sanford contends that, because Hayes relies on performance reviews when selecting EXAs to promote, Rost's allegedly discriminatory review prevented him from being promoted. Sanford's claim cannot survive summary judgment.

"[N]egative performance evaluations, standing alone, are not cognizable adverse employment actions, and Sanford's attempt to generate a cognizable claim by tying his performance review to Hayes's promotion decisions is unsuccessful. *de la Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 686 (7th Cir. 2008); *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 729 (7th Cir. 2001) ("unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions"). As discussed above, Hayes bases her promotion decisions on a variety of factors in addition to employees' performance reviews. (DSOF ¶ 56.) She has no bright-line rule requiring minimum performance ratings, and in fact she has promoted two EXAs whose performance reviews were not superior to Sanford's. (*See id.* ¶¶ 63, 65.)

More importantly, Sanford fails to demonstrate that Rost's review is anything but an honest, accurate assessment of his performance. Sanford admits that his overall rating of "meets

---

[7] As a final note, the Court rejects Sanford's reliance on the Consent Decree in *Tucker, et al. v. Walgreen Co.*, Case No. 3:05-cv-00440-GPM-CJP, S.D. Ill., to establish a prima facie case of discrimination under either the direct or indirect method. The Consent Decree in *Tucker* is legally irrelevant to Sanford's individual claim that he was denied a promotion because of his race. Furthermore, to the extent that Sanford believes Walgreens is not complying with the Consent Decree, the Decree provides for enforcement procedures that do not include resorting immediately to this Court. (*See* Pl. Ex. 4 at 17-21) (outlining enforcement procedures).

expectations" matches both the rating Rost gave him in 2006 and the ratings assigned by other managers in 2008 and 2009. However, Sanford does not claim that either Rost's 2006 review or the other managers' reviews reflect discrimination. (*Id.* ¶¶ 29-30.) While Sanford believes he was rated unfairly in six categories of his 2007 performance review, he admits to shortcomings in four of those categories— Shrink Control, Pharmacy Operations, Follow-Through, and Time Management. (DSOF ¶ 31.) With respect to the remaining two categories, Leadership and Inventory Management, Sanford offers only self-serving statements that he deserved higher ratings, without providing any supporting evidence. (*See* PSOF ¶ 33.) Sanford's "self-serving statements about his ability . . . are insufficient to contradict an employer's negative assessment of that ability." *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 740 (7th Cir. 2006) (quoting *Jackson v. E.J. Branch Corp.*, 176 F.3d 971, 985 (7th Cir. 1999)) (internal quotation marks omitted). Accordingly, Sanford's opinion that he deserved higher ratings fails to establish that his performance review was a pretext for discrimination. *See Mlynczal v. Bodman*, 442 F.3d 1050, 1058 (7th Cir. 2006) ("if the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed") (quoting *Mills v. First Fed. Sav. & Loan Ass'n of Belvidenere*, 83 F.3d 833, 841-42 (7th Cir. 1996)) (internal quotation marks omitted). Finally, the Court notes that the same performance review Sanford believes is discriminatory included ratings of "above average" in four categories and praised Sanford for serving as a "team player [who] will help out where required," being "very good with customers and employees" and "communicat[ing] with people very well." (Pl. Ex. 9.) Because Sanford fails to raise an inference that his 2007 performance review was a pretext for discrimination, or that this review constituted a materially adverse employment action, the Court grants summary

judgment on Sanford's claim that his performance review was discriminatory in violation of Title VII.

## III. Retaliation

Walgreens next moves for summary judgment on Sanford's claim that the company retaliated against him by failing to promote him after he filed a charge of discrimination with the EEOC. Sanford filed his charge with the EEOC on February 27, 2008 and takes issue with the five promotions that occurred after that date. (PSOF ¶ 30.) Of the five EXAs promoted, two were black, one was Hispanic, and two were white. (*Id.*) Sanford believes that he was more qualified than all five of them, and that Walgreens's failure to promote him stemmed from discrimination and retaliation. Title VII forbids an employer from discriminating against an employee who has "opposed any practice" made unlawful by Title VII or who "has made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). A plaintiff can establish a prima facie case of retaliation in one of two ways: the "direct method" or the "indirect method." *Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008). Because Sanford is unable to establish a prima facie case under either method, his retaliation claim must fail.

### a. Direct Method

Under the direct method, a plaintiff must present evidence, direct or circumstantial, demonstrating that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) a causal link connects the two. *Id.* Sanford is unable to present evidence, direct or circumstantial, to demonstrate a causal link between the filing of his EEOC complaint and Walgreens's failure to promote him. Sanford claims that such a link is demonstrated by "the timing of events considered with the surrounding circumstances." (Pl. Br. 14.) However, at

summary judgment, "mere temporal proximity is not enough to establish a genuine issue of material fact." *Andonissamy v. Hewlet-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008) (quoting *Wyninger v. New Venutre Gear, Inc.*, 361 F.3d 965, 981 (7th Cir. 2004)) (internal quotation marks omitted). Furthermore, the "surrounding circumstances" include nothing more than Sanford's belief that he was more qualified than the individuals promoted and his related criticism of Hayes's methodology for awarding promotions. For the reasons this evidence was insufficient to raise an inference of discrimination, it is also insufficient to raise an inference that Hayes retaliated against Sanford by denying him a promotion. Sanford cannot demonstrate a causal link between his EEOC complaint and Walgreens's failure to promote him, and he has therefore failed to establish a prima facie case of retaliation under the direct method.

### b. Indirect Method

Sanford fares no better under the indirect method. As an alternative to the direct method, a plaintiff may proceed under the indirect method by establishing that: (1) he engaged in statutorily protected activity; (2) he met his employer's legitimate expectations; (3) despite his satisfactory performance, he suffered a materially adverse employment action; and (4) he was treated less favorably than similarly situated employees who had not engaged in statutorily protected activity." *Argyropoulos*, 539 F.3d at 724. Sanford cannot meet the burden imposed by the fourth prong of this analysis. First, Sanford fails to present evidence that the five EXAs promoted after he filed his complaint did not also file complaints with the EEOC. Sanford blames Walgreens for his failure to produce this evidence, claiming that Walgreens refused to respond to certain discovery requests related to Sanford's retaliation claim. However, the discovery requests at issue sought the complaints of all Walgreens's employees nationwide for a six-year period, and Walgreens objected to these requests as overly broad and burdensome.

Furthermore, the scope of these requests was the subject of Sanford's Motion to Compel (Dkt. 29), which the Court denied in this regard. (*See* Dkt. 44.) In any event, it is Sanford's burden to establish that the EXAs promoted did not also file EEOC complaints, and he has failed to do so.

Second, Sanford has failed to establish that the five promoted EXAs were "similarly situated" to him to the extent that they were no more qualified for promotions than he was. *See Fischer v. Avanade, Inc.*, 519 F.3d 393 (7th Cir. 2008). Sanford cannot establish this element of the prima facie case. As discussed with respect to Sanford's discrimination claim, Sanford's subjective belief that his seniority and other particular attributes render him more qualified than the promoted EXAs is insufficient to create a genuine issue of material fact on this element. *See Stephens v. Erickson*, 569 F.3d 779, 788 (7th Cir. 2009) ("to create an inference of retaliation based upon a difference in credentials, [the plaintiff] must offer more than 'mere self-serving appraisals,' [] or his own subjective belief that he was as qualified as the successful applicant") (quoting *Hall v. Forest River, Inc.*, 536 F.3d 615, 620 (7th Cir. 2008)). Moreover, for the reasons discussed throughout this opinion, Sanford cannot establish that Walgreens's explanations for its promotion decisions are pretextual. Because Sanford has failed to demonstrate that similarly situated Walgreens employees who did not file EEOC complaints were treated more favorably than he was, Sanford cannot establish a case of retaliation under the indirect method.

As Sanford's attempts to prove retaliation under the direct and indirect methods both fail, the Court must grant summary judgment on Sanford's retaliation claim.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is GRANTED.

        Enter:
        /s/ David H. Coar

        _____
        David H. Coar
        United States District Judge

**Dated:** January 27, 2010